UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Criminal No. 99-0182 (PLF)<br>KENNETH KEITH LONG, )<br>)<br>Defendant. )<br>) | |

OPINION AND ORDER

Pending before the Court are defendant Kenneth Keith Long's pro se Motion to Reduce Sentence and/or Grant Early Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Def. Pro Se Mot.") [Dkt. No. 257] and his Supplemental Motion for Compassionate Release ("Redacted Def. Suppl. Mot.") [Dkt. No. 268], filed through counsel. See also Sealed Supplemental Motion for Compassionate Release ("Sealed Def. Suppl. Mot.") [Dkt. No. 263-1]. Mr. Long contends that he is at risk of serious illness or death if he contracts the novel coronavirus ("COVID-19") while in the custody of the Federal Bureau of Prisons ("BOP"), and that he has been substantially rehabilitated while incarcerated. Def. Pro Se Mot. at 17-18, 25-29; Def. Sealed Suppl. Mot. at 3-5, 25-51. He requests compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Def. Pro Se Mot. at 2; Def. Sealed Suppl. Mot. at 3.

The United States opposes Mr. Long's motions, arguing that he has failed to establish that a sentence reduction is warranted under the statute. United States' Sealed Opposition to Defendant's Motion to Reduce Sentence Pursuant to the Compassionate Release Statute, 18 U.S.C. § 3582(c)(1)(A)(i) ("Sealed Gov't Opp.") [Dkt. No. 266-1] at 1. The United States maintains that Mr. Long's health concerns do not establish extraordinary and compelling

reasons for a sentence reduction, both because they seem "monitored and controlled" and because Mr. Long is fully vaccinated against the COVID-19 virus. Id. at 13-15; United States' Surreply to the Defendant's Supplemental Motion for Compassionate Release ("Gov't Surreply") [Dkt. No. 274] at 7. The United States also argues that Mr. Long should not be released because he remains a danger to society, and that he should serve the full sentence imposed to account for the serious nature of his offenses. Sealed Gov't Opp. at 18-21. For the following reasons, the Court will deny Mr. Long's motions for compassionate release.[1]

---

[1] The Court has reviewed the following documents in connection with the pending motion: Retyped Indictment ("Indictment") [Dkt. No. 97]; Jury Verdict Form ("Jury Verdict Form") [Dkt No. 166]; Judgment and Commitment ("Judgment") [Dkt. No. 221]; Motion to Reduce Sentence and/or Grant Early Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Def. Pro Se Mot.") [Dkt. No. 257]; January 28, 2021 Letter Regarding Compassionate Release ("Jan. 28, 2021 Letter") [Dkt. No. 262]; Sealed Supplemental Motion for Compassionate Release ("Sealed Def. Suppl. Mot.") [Dkt. No. 263-1]; Sealed Defense Exhibit 1 – Medical Records ("Sealed Def. Ex. 1") [Dkt. No. 263-3]; Sealed Defense Exhibit 2 – BOP Records ("Sealed Def. Ex. 2") [Dkt. No. 263-4]; Sealed Defense Exhibit 3 – Letter to the Court ("Sealed Def. Ex. 3") [Dkt. No. 263-5]; Sealed Defense Exhibit 4 – Release Plan ("Sealed Def. Ex. 4") [Dkt. No. 263-6]; Sealed Defense Exhibit 5 – Volunteer Substance Abuse Management Program Proposal ("Sealed Def. Ex. 5") [Dkt. No. 263-7]; Sealed Defense Exhibit 6 – Letters of Support ("Sealed Def. Ex. 6") [Dkt. No. 263-8]; Sealed Defense Exhibit 7 – Williamsburg COVID-19 Cases ("Sealed Def. Ex. 7") [Dkt. No. 263-9]; United States' Sealed Opposition to Defendant's Motion to Reduce Sentence Pursuant to Compassionate Release Statute, 18 U.S.C. § 3582(c)(1)(A)(i) ("Sealed Gov't Opp.") [Dkt. No. 266-1]; Sealed Government Exhibit 1 – Presentence Investigation Report ("Sealed Gov't Ex. 1") [Dkt. No. 266-2]; Redacted Supplemental Motion for Compassionate Release ("Redacted Def. Suppl. Mot.") [Dkt. No. 268]; Sealed Reply in Support of Supplemental Motion for Compassionate Release ("Sealed Def. Reply") [Dkt. No. 269-1]; Sealed Defense Exhibit 8 – Declaration of Tara Vijayan, M.D., M.P.H. ("Sealed Def. Ex. 8") [Dkt. No. 269-2]; Notice of Supplemental Authority ("Def. Notice Suppl. Authority") [Dkt. No. 272]; Supplement to Compassionate Release Filings ("Def. Suppl.") [Dkt. No. 273]; United States' Surreply to the Defendant's Supplemental Motion for Compassionate Release ("Gov't Surreply") [Dkt. No. 274]; Surreply Exhibit 1 – Declaration of Kristi Nolte ("Gov't Surreply Ex. 1") [Dkt. No. 274-1]; Surreply Exhibit 2 – Immunization Record ("Gov't Surreply Ex. 2") [Dkt. No. 274-2]; Reply to Government Surreply ("Def. Reply to Gov't Surreply") [Dkt. No. 275]; and Supplement Regarding Delta Variant ("Def. Suppl. Delta") [Dkt. No. 276].

2

I. BACKGROUND

On December 20, 1999, a jury convicted Mr. Long of two counts of interstate transportation of a minor for the purpose of sexual activity in violation of 18 U.S.C. § 2423(a), and two counts of possession of visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). Jury Verdict Form at 1-6; see also Retyped Indictment at 1-7; Sealed Def. Suppl. Mot. at 6-7; Sealed Gov't Opp. at 2. The Court sentenced Mr. Long on January 7, 2002, to an aggregate term of thirty years of incarceration, the statutory maximum, followed by three years of supervised released. Judgement at 2; see also Sealed Def. Suppl. Mot. at 11; Sealed Gov't Opp. at 2. At the time Mr. Long filed his supplemental motion for compassionate release, he had served approximately twenty-one years and nine months, or seventy-two percent, of his thirty-year sentence. Sealed Def. Suppl. Mot. at 11; Sealed Gov't Opp. at 2. Assuming BOP gives him the maximum allowable good time credit for good behavior – thirty-three months – Mr. Long has served almost twenty-four and a half years, or eighty-two percent, of his thirty-year sentence. See Sealed Def. Suppl. Mot. at 11; Sealed Gov't Opp. at 3.

Mr. Long, now fifty-six years old, is incarcerated at FCI Williamsburg. Sealed Def. Suppl. Mot. at 3. Mr. Long asserts that he ▊▊▊▊▊▊▊ and has chronic kidney disease, prediabetes, hypertension, and familial combined hyperlipidemia, among other medical conditions, and that these conditions, along with his age, make him particularly vulnerable to serious illness if he contracts COVID-19. Id. at 3, 17-18, 22. The United States reported that as of March 24, 2021, ten inmates and one staff member at FCI Williamsburg tested positive for COVID-19, and that there had been three inmate deaths and no staff deaths from COVID-19. Sealed Gov't Opp. at 21. The United States reported on May 28, 2021, that FCI Williamsburg had "one positive case of COVID-19 among inmates and no positive cases among staff." Gov't Surreply at 2. The United States also reported that Mr. Long had received his first

3

dose of the Pfizer-BioNTech COVID-19 vaccination on March 16, 2021, had received his second dose of the vaccine on April 6, 2021, and "is now fully vaccinated against COVID-19." Id. at 1-2; see also Gov't Surreply Ex. 1 ¶ 6; Gov't Surreply Ex. 2 at 1.

## II.  LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed . . . ; but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011) (internal quotation marks and citation omitted). One such exception is codified at 18 U.S.C. § 3582(c)(1)(A). As modified by the First Step Act in 2018, Section 3582(c)(1)(A) allows courts to modify a sentence upon a motion by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A).

Once this exhaustion requirement is met, a defendant must show that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). In evaluating extraordinary and compelling circumstances, courts historically have looked to a policy statement promulgated by the U.S. Sentencing Commission. See U.S. SENT'G GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 cmt. n.1(A) (U.S. SENT'G COMM'N 2018). The Sentencing Commission issued this policy statement in 2018 but it "has lacked a quorum since early 2019, and so it has been unable to update its preexisting policy statement concerning compassionate release to reflect the First Step Act's changes." United States v. Long, 997 F.3d 342, 348 (D.C. Cir. 2021). Specifically, the policy statement refers only to motions brought by the BOP and does not account for the fact that defendants may now bring compassionate release motions on their own behalf. See id. at 349.

4

The D.C. Circuit therefore has held that the policy statement "is not 'applicable' to defendant-filed motions for compassionate release under the First Step Act." United States v. Long, 997 F.3d at 355.  In so holding, the D.C. Circuit did not address how district courts should evaluate extraordinary and compelling circumstances.  Other circuits have held that even if the policy statement is not controlling for defendant-filed motions, it may still provide guidance as to the extraordinary and compelling nature of a defendant's circumstances.  See United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021); United States v. Thompson, 984 F.3d 431, 433 (5th Cir. 2021); United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020).

According to the policy statement, "extraordinary and compelling reasons" exist where the defendant is "suffering from a serious physical or mental condition" or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility."  U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), (III).  Health conditions that limit one's ability to practice self-care in a detention facility include those that "compromise a defendant's ability . . . to provide for his own activities of daily living, such as eating and drinking, toileting, washing and dressing, and mobilization."  United States v. Morris, Criminal No. 12-154, 2020 WL 2735651, at *7 (D.D.C. May 24, 2020).  The policy statement also acknowledges that there may be "[o]ther [r]easons" presenting "an extraordinary and compelling reason other than, or in combination with, the reasons described" elsewhere in the commentary.  Id. at *3 (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)).  To that end, courts have found that the

5

COVID-19 pandemic falls under such an "other reason" that may present an "extraordinary and compelling reason" for a sentencing reduction. Id. at *7.[2]

The statute instructs courts to consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable" in relation to a compassionate release motion. 18 U.S.C. § 3582(c)(1)(A). The factors listed in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; . . .

18 U.S.C. § 3553(a)(1)-(2). Consideration of the sentencing factors "requires a discretionary balancing" by the district court, United States v. Long, 997 F.3d at 360, "with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence," United States v. Johnson, 464 F. Supp. 3d 22, 30 (D.D.C. 2020).[3]

---

[2] As Judge Moss has explained, whether a court considers the policy statement in evaluating extraordinary and compelling circumstances is "seemingly inconsequential for compassionate release motions based on COVID-19" because "[a] court concluding that it can consider such a motion under U.S.S.G § 1B1.13, cmt. (1)(D) ends up in the same place as a court concluding that it can do so because the policy statement does not apply." United States v. Shepard, Criminal No. 07-85, 2021 WL 848720, at *4 (D.D.C. March 4, 2021).

[3] The text of Section 3582(c)(1)(A) also directs courts to evaluate whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). As noted above, the 2018 policy statement "is not 'applicable' to defendant-filed motions for compassionate release under the First Step Act." United States v. Long, 997 F.3d at 355. The D.C. Circuit in Long specified that the requirement of the policy statement that release be denied if a defendant remains "a danger to the safety of any other person or to the community," id. at 348 (quoting U.S.S.C. § 1B1.13(2)), no longer

III.  DISCUSSION

Mr. Long submitted a request for compassionate release to the BOP, and the warden denied this request on June 22, 2020.  See Def. Pro Se Mot. at 37.  Mr. Long therefore has exhausted his administrative remedies and his request is properly before this Court.  See 18 U.S.C. § 3582(c)(1)(A).

Mr. Long's motions raise concerns that he could suffer "severe illness or death" if he contracts COVID-19 while incarcerated.  Sealed Def. Suppl. Mot. at 3; see also Def. Pro Se Mot. at 17-19, 33.  Specifically, he argues that he faces increased risk related to COVID-19 because he has chronic kidney disease, hypertension, ▇, familial combined hyperlipidemia, and prediabetes, and is fifty-six years old.  Sealed Def. Suppl. Mot. at 3, 32-33.

Guidance from the Centers for Disease Control and Prevention ("CDC") indicates that three of Mr. Long's medical conditions could place him at increased risk from COVID-19, were he not fully vaccinated against the virus:  chronic kidney disease; hypertension; and ▇.  Sealed Def. Suppl. Mot. at 13; Gov't Surreply at 7 n.2; see People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal (updated May 13, 2021).[4]  The CDC also recognizes that "the

---

presents a "categorical bar" to compassionate release, id. at 360.  At the same time, "even without the policy statement, courts will still consider the anticipated effect of compassionate release on crime and public safety" in weighing the sentencing factors set out in 18 U.S.C. § 3553(a).  Id. at 356.

[4]     At the time defense counsel filed her supplemental motion on Mr. Long's behalf and the United States filed its opposition, the CDC guidance distinguished between "conditions that definitively entailed a greater risk of severe illness and . . . conditions that 'might' entail a greater risk of severe illness" in relation to COVID-19.  Gov't Surreply at 7 n.2.  One of Mr. Long's conditions was on the list of conditions that definitely entailed a greater risk of severe illness:  chronic kidney disease.  Sealed Gov't Opp. at 13.  Two of Mr. Long's conditions were on the list of conditions that might entail a greater risk of severe illness:  ▇ and

risk for severe illness from COVID-19 increases with age" and "people in their 50s are at higher risk for severe illness [from COVID-19] than people in their 40s." Sealed Def. Suppl. Mot. at 33 (quoting Older Adults, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (updated May 14, 2021)).

The fact that Mr. Long's conditions may be "monitored and controlled," Sealed Gov't Opp. at 13, would not necessarily eliminate the risks associated with COVID-19 for an individual who is not vaccinated against the virus. As defense counsel points out, the CDC's current guidance does not distinguish between different stages of chronic kidney disease, between individuals who are taking medication for hypertension and those who are not, or between ▮▮▮▮▮▮▮▮ individuals who are asymptomatic and on an effective treatment and those who ▮▮▮▮▮▮▮▮▮▮▮▮ and are not on any treatment. See Sealed Def. Reply at 6-13; Sealed Gov't Opp. at 14-18. Instead, the most recent CDC guidance states that having any of these conditions at all "can make you more likely to get severely ill from COVID-19." People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION.

Because Mr. Long is fully vaccinated against COVID-19, however, these conditions do not establish extraordinary and compelling circumstances that would warrant a sentence reduction. As the United States explains, "[a]ccording to the CDC, the vaccine

---

hypertension. Id. The United States initially maintained that Mr. Long's ▮▮▮▮▮▮▮▮▮▮ and hypertension did not present extraordinary and compelling bases for release because the CDC had concluded only that these conditions "may" place an individual at higher risk from COVID-19. Id. at 14-18. The United States reported in its surreply that the CDC had subsequently "posted revised guidance" that "essentially recognized all conditions previously listed on the two lists" can make an adult "more likely to get severely ill from COVID-19." Gov't Surreply at 7 n.2. The United States accordingly submitted that "the fact that defendant suffers from two conditions that were previously on the 'might' list ordinarily would now mean that he has established an extraordinary and compelling reason," were he not vaccinated. Id.

8

defendant received has proven to be approximately 95% effective in preventing COVID-19 in people like defendant with no previous evidence of infection." Gov't Surreply at 3 (citing Pfizer-BioNTech COVID-19 Vaccine Overview and Safety, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (updated May 21, 2021)). The CDC guidance further explains that this vaccine remained "highly effective in clinical trials at preventing COVID-19 . . . among people with underlying medical conditions," and that the vaccines "offer similar protection in real-world conditions as they have in clinical trial settings." Pfizer-BioNTech COVID-19 Vaccine Overview and Safety, CENTERS FOR DISEASE CONTROL AND PREVENTION. Simply put, the vaccine that Mr. Long has received provides robust protection against the very risk of illness that defense counsel described in her motion. Numerous other district courts across the country have considered a defendant's vaccination status in ruling on motions for compassionate release and have concluded that being fully vaccinated seriously mitigates reasons for sentence reduction related to contracting COVID-19. See Gov't Surreply at 5-7 (collecting cases).

Mr. Long's arguments regarding his risk of contracting the "delta variant" of COVID-19, Def. Suppl. Delta, do not alter the Court's assessment. Available research suggests that individuals who are fully vaccinated, such as Mr. Long, "should retain significant protection against the delta variant." Joel Achenbach, *New Study on Delta Variant Reveals Importance of Receiving Both Vaccine Shots, Highlights Challenges Posed by Mutations*, WASH. POST (July 8, 2021), https://www.washingtonpost.com/health/delta-variant-vaccines/2021/07/08/05b1bc5e-df75-11eb-ae31-6b7c5c34f0d6_story.html; see also Mary Louise Kelly, *Fauci Says Current Vaccines Will Stand Up to the Delta Variant*, NPR (July 8, 2021), https://www.npr.org/sections/coronavirus-live-updates/2021/07/08/1014214448/fauci-says-

9

current-vaccines-will-stand-up-to-the-delta-variant; Press Release, Public Health England, Vaccines Highly Effective Against Hospitalisation from Delta Variant (June 14, 2021), https://www.gov.uk/government/news/vaccines-highly-effective-against-hospitalisation-from-delta-variant. Because Mr. Long has received both doses of the Pfizer-BioNTech COVID-19 vaccine, the presence of the delta variant does not make his circumstances extraordinary and compelling.

Furthermore, the Court is not convinced that incarceration at FCI Williamsburg substantially increases his likelihood of contracting COVID-19. The United States reported that as of late March, "10 inmates and 1 staff at FCI Williamsburg have tested positive for COVID-19; there have been 3 inmate and no staff COVID-19 deaths; and 192 inmates have recovered from COVID-19." Gov't Opp. at 21. As of May 28, 2021, the United States reported that FCI Williamsburg had just one positive case of COVID-19 among inmates and no positive cases among staff, and had vaccinated 857 out of 1,471 inmates, or approximately 58.25% of its inmate population. Gov't Surreply at 2; Gov't Surreply Ex. 1 ¶ 11. This suggests that the incidence of COVID-19 in the facility where Mr. Long is incarcerated has been declining while Mr. Long's motion has been pending before the Court and that the number of cases in the facility has remained low.

Counsel for Mr. Long urges the Court to find that a "combination of Mr. Long's unique factors" renders his circumstances extraordinary and compelling, even outside the context of the COVID-19 pandemic. Def. Reply to Gov't Surreply at 3. Yet the basis for this argument revolved around the fact that Mr. Long was at "risk of dying from Covid-19." Def. Sealed Suppl. at 3; see also id. at 17-18 (discussing Mr. Long's medical conditions specifically in relation to the COVID-19 pandemic); id. at 22-35 (same). Defense counsel submitted these

10

arguments at a time when it was unclear whether Mr. Long would have access to a COVID-19 vaccine, or that the incidence of COVID-19 at FCI Williamsburg would decline as it has. The "harshness and deprivations" of federal prisons generally, Def. Reply to Gov't Surreply at 5, affect all incarcerated individuals and do not justify release in Mr. Long's specific case.

The Court also concludes that reducing Mr. Long's sentence at this time would be inconsistent with the applicable sentencing factors in 18 U.S.C. § 3553(a). Mr. Long was convicted of multiple offenses involving sexual exploitation of minors, Jury Verdict Form at 1-6, and the Court remembers the trial and the testimony of the victims only too well. Mr. Long abused his position of trust and authority as a substitute teacher, Baptist minister, role model, and father figure to commit these felonies. Sealed Gov't Opp. at 3. Most of his victims were unusually vulnerable, special needs children of disadvantaged single parents. See generally United States v. Long, 185 F. Supp. 2d 30, 39-43 (D.D.C. 2001). The egregious nature and indelible impact of Mr. Long's offenses are inescapable; in fact, one of his victims attempted suicide. Sealed Gov't Opp. at 19. "Given the shocking nature of [Mr. Long's] crime[s], his sentence was appropriate, and he has not yet served enough of that sentence 'to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" United States v. Shepard, 2021 WL 848720, at *8 (quoting 18 U.S.C. § 3553(a)).

The "need for the sentence imposed . . . to protect the public from further crimes of the defendant" also weighs against reducing Mr. Long's sentence. 18 U.S.C. § 3553(a)(2)(C). Mr. Long's history reveals "a pattern of conduct that resulted in sexual contact" targeting vulnerable youth for extended periods of time. Sealed Gov't Opp. at 3; see also id. at 19. Well before the offenses for which he is currently serving this thirty-year sentence, he had a prior conviction "for procuring a person under the age of 16 for prostitution in Florida." Id. at 19.

Merely one year into probation for that conviction, Mr. Long began committing the protracted criminal sexual behavior targeting minors for which he is currently incarcerated. Id. This conduct "involved the systematic and long-term abuse of multiple young victims whom the defendant specifically targeted for their vulnerabilities." Id.

Mr. Long maintains that he has been significantly rehabilitated while incarcerated, including by completing the Nonresidential Sex Offender Treatment program in 2010. Sealed Def. Suppl. Mot. at 43 (citing Sealed Ex. 2 at 5). In relation to this program, a physician assessed that Mr. Long was in a "low risk category" and unlikely to reoffend. Id. at 43-45; Sealed Def. Reply at 34-35. Mr. Long also completed a PhD in Holistic Theology while incarcerated; has worked on creating and implementing a rehabilitative program for inmates with substance abuse problems; and has served as an instructor teaching GED classes to inmates, among other community activities. Id. at 44-46. Nevertheless, in light of the severity and systematic nature of the crimes for which he was sentenced, Mr. Long's efforts at self-improvement do not outweigh concerns that he may remain a serious threat to minors when released. The Court concludes that there is an ongoing need "to protect the public from further crimes of the defendant." U.S.C. § 3553(a)(2)(C); see United States v. Shepard, 2021 WL 848720, at *8 (denying compassionate release where the defendant was serving a thirty-year sentence in relation to sexual exploitation of minors, despite a psychologist's report indicating a low risk of recidivism, because his "pattern of behavior" suggested he might still pose a "risk to the community").

## IV.  CONCLUSION

Because Mr. Long's circumstances lack the requisite extraordinary and compelling character, and because the sentencing factors identified in Section 3553(a) weigh

against reducing Mr. Long's sentence, the Court will deny Mr. Long's motions for compassionate release. It therefore is hereby

ORDERED that Mr. Long's pro se Motion to Reduce Sentence and/or Grant Early Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(1)(i) [Dkt. No. 257] is DENIED; and it is

FURTHER ORDERED that Mr. Long's Supplemental Motion for Compassionate Release [Dkt. No. 268] is DENIED.

SO ORDERED.

/s/

PAUL L. FRIEDMAN
United States District Judge

DATE: July 28, 2021